IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEONARD ROWE, *et al.*,        :
                               :
     Plaintiffs,               :
                               :
     v.                        :        CIVIL ACTION NO.
                               :        1:15-CV-00770-AT
GARY, WILLIAMS, PARENTI,       :
WATSON & GARY, P.L.L.C., *et al.*, :
                               :
     Defendants.               :

## ORDER

This matter is before the Court on Defendant Maria Sperando's Motion for Sanctions [Doc. 92]. Plaintiffs Leonard Rowe, Rowe Entertainment, Inc., Lee King, and Lee King Productions, Inc. filed their Complaint in this Court against their former attorneys Gary, Williams, Parenti, Watson & Gary, P.L.L.C. ("the Gary Firm"), Willie E. Gary, William C. Campbell, Sekou M. Gary, Tricia P. Hoffler, Lorenzo Williams, and Maria P. Sperando. This Court dismissed Plaintiffs' claims, but Defendant Maria Sperando now moves for the Court to impose sanctions on Plaintiffs and their counsel pursuant to Federal Rule of Civil Procedure 11, the inherent power of the court, and 28 U.S.C. § 1927. For the reasons set forth below, the Court **GRANTS** Defendant Sperando's Motion for Sanctions under Fed. R. Civ. P. 11 and **DENIES** the Motion for Sanctions under 28 U.S.C. § 1927 and the inherent power of the court.

## I.   BACKGROUND

Plaintiffs brought this suit against Defendants asserting violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), fraud, legal malpractice, and unjust enrichment arising from Defendants' past representation of Plaintiffs.  Plaintiffs Leonard Rowe and Lee King are African-American concert promoters, who have been working in the concert promoting industry since the mid-1970s.   (Compl. ¶ 45.)   From 2001 to 2005, Defendants represented Plaintiffs in a civil rights and antitrust lawsuit against white talent booking agencies and concert promoters who Plaintiffs alleged engaged in racially discriminatory practices with respect to black concert promoters.  *See Rowe Entm't, Inc. v. William Morris Agency, Inc.,* No. 98 Civ. 8272(RPP), 2005 WL 22833 (S.D.N.Y. Jan. 5, 2005), *aff'd* 167 F. App'x 227 (2d. Cir. 2005).   In that case, Plaintiffs' counsel undertook e-discovery, which yielded a memorandum from an e-discovery firm that arguably could support Plaintiffs' discrimination claim, but Plaintiffs' counsel, including Defendants, did not obtain the emails referred in the memorandum as evidence.  *Rowe v. Gary, Williams, Parenti, Watson & Gary, PLLC,* 181 F. Supp. 3d 1161, 1169, 1171 (N.D. Ga. 2016). Following Plaintiffs' inability to produce admissible evidence of discrimination, the case was dismissed by the Southern District of New York on summary judgment. *Id.* at 1170.  In this case, Plaintiffs alleged that Defendants employed a scheme to defraud them by intentionally causing their case to be dismissed in exchange for a bribe from the talent-agency defendants in that suit.  *Id.* at 1172.

On March 31, 2016, this Court entered an order granting Defendants'
Motions to Dismiss Plaintiffs' RICO claim and declined to exercise jurisdiction
over the remaining state law claims.[1] (Doc. 71.) At oral argument on the motions
to dismiss, Sperando informed the Court she intended to move for sanctions in
the event the Court were to grant her motion to dismiss. However, in the Order
granting the Motions to Dismiss, the Court advised that because it did not find
the Plaintiffs' allegations to be inherently frivolous, the Court would not entertain
a motion for sanctions by any of the Defendants. *Rowe*, 181 F. Supp. 3d at 1195.
Instead the Court noted that "[t]here is no doubt that Plaintiffs, though belated
and arguably misguided in their efforts here, were deeply impacted by their
professional experiences and by the loss of their landmark case in which they
believed they would prevail, in reliance on the representations of their counsel at
the Gary Firm." *Id.*

Sperando appealed the Court's refusal to entertain a motion for sanctions.
On appeal, the Eleventh Circuit concluded that this Court applied the wrong legal
standard required under Fed. R. Civ. P. 11, which imposes an objective standard.
*Rowe v. Gary*, 703 F. App'x. 777, 780 (11th Cir. 2017). The Eleventh Circuit
concluded that this Court, in finding that Plaintiffs' allegations were not
inherently frivolous, relied on the Plaintiffs' subjective circumstances and failed

---

[1] In addition to her motion to dismiss, Sperando served (but did not yet file) a motion for
sanctions on the plaintiffs, as required by Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P.
11(c)(2) (requiring a motion for sanctions be served 21 days before it is filed). Plaintiffs filed a
motion for extension of time to respond to the motions and attached a copy of Sperando's
proposed motion for sanctions. In granting Plaintiffs' extension request, the Court noted that it
would not consider any sanctions motions until after it ruled on the motions to dismiss.
Therefore, that sanctions motion was never filed.

to explain why their legal theories or factual allegations in the Complaint were not objectively frivolous. *Id.* The Eleventh Circuit remanded the case to this Court for consideration of Sperando's sanctions motion. *Id.*

## II.   DISCUSSION

Defendant Maria Sperando, *pro se,* filed her Motion for Sanctions against Plaintiffs and their current attorneys,[2] asserting that Plaintiffs' previous RICO claims were frivolous and an attempt to "shakedown" the Defendants for money. Sperando's Motion for Sanctions requested the following sanctions: payment of Sperando's expenses incurred "defending herself against Plaintiffs' frivolous RICO claims and prosecuting the appeal," totaling $2,255.76; payment of a fine to the Court in the amount of $562,000, calculated by multiplying Sperando's hourly rate of $500.00 by the 1,124 hours she claims to have spent defending herself in this Court and on appeal; an admonishment by the Court; "a public apology by Plaintiffs on every form of media on which they and their cohorts have disparaged Sperando"; and "a public disavowal by Rowe and King of their cronies' blistering and baseless internet rants against Sperando."

Rule 11 permits courts to impose "appropriate sanctions" when a party submits a document to the court that "(1) has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith or for an improper purpose."

---

[2] Sperando's Motion for Sanctions also requests that the Court "determine what role, if any, Joseph Sayad, an associate of Plaintiffs' lead attorney, Edward Griffith, played in filing and prosecuting Plaintiffs' frivolous and fraudulent RICO claims and whether he should be sanctioned as well." (Mot. Sanctions at 1 n. 1.) Joseph Sayad is not one of Plaintiffs' attorneys of record in this case, nor did he sign any of the pleadings at issue in the case. Therefore, the Court will only consider whether sanctions are appropriate against Plaintiffs' counsel of record, Linell Rowe and Edward Griffith, and Plaintiffs Leonard Rowe and Lee King.

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002); *see also* Fed. R. Civ. P. 11(b).  Under Federal Rule of Civil Procedure 11(b),

> [w]hen an attorney files a pleading in federal court, the attorney signs the pleading to certify that, among other things, (1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law or a nonfrivolous argument to change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery.

*Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (citing Fed. R. Civ. P. 11(b)). This Court may "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).  The signature requirement of Rule 11 operates as a certification "to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542-43 (1991).

The purpose of Rule 11 is "to deter baseless filings" in district court and "help to streamline the litigation process by lessening frivolous claims or defenses." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citing Fed. R. Civ. P. 11 advisory committee's note); *Thomas v. Evans*, 880 F.2d 1235 (11th Cir. 1989) (same).  "Whether sanctions are viewed as a form of cost-shifting, compensating opposing parties injured by the vexatious or frivolous litigation forbidden by Rule 11, or as a form of punishment imposed on those who violate the rule, the imposition of sanctions pursuant to Rule 11 is meant to deter

attorneys from violating the rule." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (citing Fed. R. Civ. P. 11 advisory committee's note).

The Court must apply a two-step inquiry when determining whether Rule 11 sanctions are appropriate. The Court considers: (1) "whether the party's claim is objectively frivolous, in view of the law or facts" and (2) "whether the person signing the document should have been aware that it was frivolous." *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995). "The objective standard for assessing conduct under Rule 11 is reasonableness under the circumstances and what it was reasonable to believe at the time the pleading was submitted." *Riccard*, 307 F.3d at 1294 (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (internal quotation marks omitted). "Sanctions are warranted when a party exhibits a deliberate indifference to obvious facts, but not when the party's evidence to support a claim is merely weak." *Id.*

## A.    Whether Plaintiffs' Claims Were Objectively Frivolous

Sperando asserts that Plaintiffs' claims satisfy the two-step inquiry, and therefore, the Court should find that Plaintiffs violated Rule 11. First, Sperando argues that Plaintiffs' claims were frivolous because Plaintiffs "fabricated a fantastical tale of bribery and sabotage which was supported by no evidence." (Mot. Sanctions at 5.) Plaintiffs assert that their claims were reasonable under the circumstances because Defendants never offered a coherent explanation for their failure to introduce admissible evidence in Plaintiffs' civil rights case and that it was reasonable for them to rely on Mr. Gary's representations that the case

6

was lost due to the racism of Judge Patterson.

In the Court's inquiry into whether a claim is objectively frivolous, the Court may consider a complaint baseless where "the plaintiff has absolutely no evidence to support its allegations." *In re Mroz*, 65 F.3d at 1573. "[T]he lack of evidence to support a plaintiff's factual assertions or legal theories is an important element in the sanction analysis." *Id.* Viewing the facts and law objectively, Plaintiffs' claims were frivolous per the standard under Rule 11. In the Order granting Defendants' Motion to Dismiss, this Court found that Plaintiffs had failed to state a plausible RICO claim because "Plaintiffs fail[ed] to substantiate the central allegations underlying the RICO scheme" with the particularity required under Fed. R. Civ. P. 9(b). *Rowe*, 181 F. Supp. 3d at 1186. The Court explained that Plaintiffs "failed to identify even one specific statement, document, or piece of evidence uncovered in the underlying lawsuit that substantiate[d] their bribery assertion." *Id.* at 1187. While Plaintiffs made a number of claims in their Complaint based on "information and belief," Plaintiffs failed to allege "any circumstantial evidence remotely supporting their 'information and belief' allegation that a bribe occurred." *Id.* at 1188. Rather, Plaintiffs "allege[d] nothing more than pure speculation in support of their RICO claims." *Id.* Finally, the Court found there were "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the Plaintiffs would ask the court to infer." *Id.* at 1192; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S.

662, 679–80 (2009)); *Bell Atlantic v. Twombly*, 550 U.S. 544, 567 (2007) (acknowledging that alleged parallel conduct was consistent with an unlawful agreement, but concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior).    For example, the Court concluded that Plaintiffs' allegation that the Gary Firm's scheme centered on ensuring the district court would not consider crucial evidence of the alleged discriminatory practices of the defendants in the civil rights action did not stand up under the scrutiny of the underlying record to the more logical and alternative explanation for the Gary Firm's mishandling of the case at summary judgment. *Id.* at 1192-93.

Specifically, the claims asserted against Sperando were objectively frivolous because Plaintiffs' Complaint failed to allege facts identifying what wrongful action Defendant Sperando, apart from any other Defendants, allegedly committed.  As the Court found previously in the Order of dismissal, in a RICO case involving multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997).  Plaintiffs' Complaint improperly pled the RICO claim against all of the Defendants collectively. *Rowe*, 181 F.Supp.3d at 1181.  By failing to provide specific facts regarding Sperando's role in the alleged fraud and her agreement to participate in the alleged conspiracy, nothing indicates Plaintiffs or their counsel had a reasonable belief as

to Sperando's participation in the alleged bribery scheme at the center of the RICO claim.[3]  Her role as a partner in the Gary Firm and lawyer on the case was not alone sufficient to establish her agreement to the alleged conspiracy.

Second, Sperando also claims that Plaintiffs' unwillingness to dismiss their claims further demonstrates that Plaintiffs knowingly continued to assert frivolous claims.  When inquiring whether Plaintiffs and their attorneys should have been aware the claims were frivolous, the Court must examine whether the attorney conducted a reasonable inquiry into the matter.  *In re Mroz*, 65 F.3d at 1573.  To determine whether the attorney conducted a reasonable inquiry, the Court may consider, among others: "whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; [or] whether the pleading, motion, or other paper was based on a plausible view of the law."  *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987).

Here, Plaintiffs' attorneys should have known that the RICO claim was frivolous.  The Court understands that Plaintiff Rowe believed he had been grievously wronged.  However, it was the responsibility of his attorneys to thoroughly investigate the prior related litigation as well as the evidentiary and legal issues raised by the Gary Firm's detailed 10-page letter sent in response to Plaintiffs' current lead counsel after counsel had transmitted a draft complaint

---

[3] "Plaintiffs' Complaint does not contain any factual allegations about the Gary Lawyers' agreement to commit the predicate acts of mail and wire fraud or obstruction. Rather, Plaintiffs' Complaint pleads the RICO claims against the Defendants in the collective as the Gary Firm. All of Plaintiffs' allegations regarding the conspiracy agreement are conclusory. Plaintiffs' would simply have this Court impute liability for Gary's actions onto the other lawyers in his firm as a matter of guilt by sheer association." *Rowe*, 181 F. Supp. 3d at 1194-95.

for this case along with a demand letter.[4] (Mot. for Sanctions, Ex. 20.)

Plaintiffs' claims were based on the fraud allegedly committed through prior litigation, and their attorneys were obligated to conduct a reasonable inquiry into the record of that litigation to determine what facts existed to support the alleged fraud.   Instead, Plaintiffs' counsel specifically relied on certain parts of the record in the underlying suit to assert conclusory allegations of fraud based on only "information and belief."   But Plaintiffs' reliance on the record in the prior suit – rather than substantiating their claims – demonstrated the implausibility of the foundation of Plaintiffs' fraud allegations as noted extensively in the Court's dismissal order.   *Rowe*, 181 F. Supp. 3d at 1178-1196. Because there was information available to Plaintiffs' attorneys from prior proceedings, they should have reasonably known that there was not evidentiary support for the RICO claim against Defendants.   Ultimately, counsel's responsibility was to confront the reality of the facts of the litigation record here, unless they had obtained hard supplemental evidence to support their RICO fraud claims. But the conclusory nature of the fundamental allegations of the Complaint and the extensive use of allegations based solely on "information and belief" indicate that Plaintiffs proceeded without such hard evidence in the face of

---

[4] The Gary firm's March 5, 2015 letter focused on the legal and evidentiary reasons why Plaintiffs' federal and state RICO claims would likely be defeated by the statute of limitations and equitable tolling requirements based on the specific factual context of the litigation and orders. This Court ultimately did not reach a definitive ruling on equitable tolling because it found that the Complaint's claims were insufficiently plead.  However, as reflected in the Court's opinion, the issues raised in the March 5th letter were substantive ones and the letter flagged for counsel's attention the evidentiary and litigation record in connection with the E-Discovery Memorandum at the heart of the Plaintiff's allegations.

a record that made their claims likely impossible.   Additionally, Plaintiffs acknowledged in response to the motions to dismiss that their Complaint would be implausible without supporting evidence, yet they offered none.[5] (*See* Pls.' Resp. to Mot. to Dismiss at 2) ("The complaint certainly contains shocking allegations that, without supporting evidence, would be 'implausible.'").

In sum, Plaintiffs and their attorneys should have known there was no factual evidence to back up their factual contentions at the time they filed the Complaint, and that Plaintiffs' RICO claim therefore was objectively not supported.   While the clients here passionately believed a fundamental injustice had occurred and counsel apparently joined them in this belief, that belief alone does not translate into an objective or reasonable basis for filing the instant lawsuit.   Rule 11 sanctions are therefore appropriate, and Sperando's Motion on that basis is **GRANTED**.

### B.     Whether Plaintiffs Are Subject to Sanctions Under 28 U.S.C. § 1927 and the Inherent Power of the Court

Defendant Sperando further asserts that sanctions are appropriate under 28 U.S.C. § 1927 and the inherent power of the court.   "To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount

---

[5] The only "new" evidence raised by Plaintiffs in connection with the instant case involved the Gary's firm's questionable handling of a major civil rights settlement in a completely different case. *See, Rowe*, 181 F. Supp. 3d at 1173.  The murky evidence involving the *Kubik* settlement might conceivably have been relevant to Plaintiffs' claims regarding the pattern of the firm's conduct – but only if Plaintiffs first had pled sufficient independent evidence to support their conspiracy/fraud claims in the instant case.

of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir. 2001); *see also LaSalle Nat'l Bank v. First Conn. Holding Group, LLC*, 287 F.3d 279, 288 (3d Cir. 2002) (stating that sanctions under 28 U.S.C. § 1927 "are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings"). An attorney multiplies the proceedings unreasonably and vexatiously "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted).

As the Eleventh Circuit noted on Sperando's appeal, "sanctions under § 1927 are meant for litigants that intentionally and unnecessarily cause delays during litigation . . . and the record does not support a finding of delay." *Rowe v. Gary*, 703 F. App'x. 777, 780, n.3. Sperando's arguments for sanctions under § 1927 are a mere repeat of her arguments under Rule 11. Sperando does not point to, and the record of the case in this Court, does not support a finding that Plaintiffs engaged in dilatory or vexatious litigation tactics after filing the Complaint in this Court.

Moreover, "the inherent-powers standard is a subjective bad-faith standard." *Purchasing Power, LLC v. Bluestem Brands*, Inc., 851 F.3d 1218

(2017) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, ‒‒‒‒ (2013) and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).   Under this standard, "a court has [the] inherent power to . . . sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Marx*, 568 U.S. at ‒‒‒‒, 133 S.Ct. at 1175 (citing *Chambers*, 501 U.S. at 45–46).   "The inherent power must be exercised with restraint and discretion. This power is not a remedy for protracted litigation; it is for rectifying disobedience . . . ." *Purchasing Power*, 851 F.3d at 1225 (citing *Chambers*, 501 U.S. at 45–46).

Plaintiffs' strongly held beliefs in the  merits and truth of their allegations of Defendants' fraud stems in part from their prior reliance on Willie Gary's over-confident representations regarding  the validity and legal strength of their civil rights action.  The course of proceedings and Plaintiffs' shock at their loss and disappointment with counsel contributed in turn to Plaintiffs' aggressive pursuit of a remedy over the years.[6]  While the Court has found that Plaintiffs' claims in this litigation were not objectively supportable, it does not find that Plaintiffs acted with subjective bad faith in pursuing claims against the Gary Firm – as would be necessary to justify the imposition of sanctions under the Court's inherent power.

---

[6] The Court recognizes that Ms. Sperando has also faced her share of stress and shock regarding Plaintiffs' litigation claims against the Gary Firm and her individually, as she states she traveled by Rowe's side, representing him in depositions across the country in connection with his civil rights suit. (*See* Ex. 4 to Mot. for Sanctions. July 20, 2015 Affidavit of Maria Sperando, Doc. 92-2 at 10-21.)

Sperando's request for sanctions under the Court's inherent power and/or §
1927 is therefore **DENIED**.

### C.     What Sanctions Are Appropriate Under the Circumstances

If the Court finds sanctions are appropriate, any sanction the Court
imposes must be limited to "what suffices to deter repetition of the conduct or
comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "Rule
11 itself gives courts the discretion to fashion sanctions to fit specific cases"
*Donaldson*, 819 F.2d at 1557 (citing Rule 11, advisory committee note ("The court
. . . retains the necessary flexibility to deal appropriately with violations of the
rule.  It has discretion to tailor sanctions to the particular facts of the case, with
which it should be well acquainted.")).  Although the sanctions most commonly
imposed are costs and attorney's fees, the selection of the type of sanction to be
imposed lies with the district court's sound exercise of discretion. *Id*. In
determining what sanctions are appropriate, courts may consider:

> whether the improper conduct was willful, or negligent; (2) whether
> it was part of a pattern of activity, or an isolated event; (3) whether it
> infected the entire pleading, or only one particular count or defense;
> (4) whether the person has engaged in similar conduct in other
> litigation; (5) whether it was intended to injure; (6) what effect it had
> on the litigation process in time or expense; (7) whether the
> responsible person is trained in the law; (8) what amount, given the
> financial resources of the responsible person, is needed to deter that
> person from repetition in the same case; and (9) what amount is
> needed to deter similar activity by other litigants.

*McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851, 853 (citing Fed. R.
Civ. P. 11 advisory committee's note).

Generally, Rule 11 allows a court to award the prevailing party "reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Indeed, Sperando, who is herself an attorney but represented herself *pro se* in this case, sought attorney's fees for her own time spent in defense of the claims in her original proposed motion for sanctions. However, she omitted the request for attorney's fees in her current sanctions motion after the Eleventh Circuit pointed out on her appeal that "a district court cannot impose a sanction of attorney's fees to be paid to a *pro se* litigant, even if that litigant is an attorney." *Rowe v. Gary*, 703 F. App'x. 777, 780, n.3 (11th Cir. 2017) (citing *Massengale v. Ray*, 267 F.3d 1298, 1302-03 (11th Cir. 2001)).

In lieu of attorney's fees, which Sperando contends would total $562,000 for the 1,124 hours she spent in defense of the claims and prosecuting her appeal at her billing rate of $500/hour, Sperando seeks sanctions of $562,000 as a fine to be paid to the Court. Although Rule 11 sanctions may include payment of a fine to the court, "the selection of the type of sanction to be imposed lies with the district court's sound exercise of discretion." *Riccard*, 307, F.3d at 1295; Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."). Other than serving as a substitute to an award of attorney's fees to which she is not entitled, Sperando has not provided any basis to justify the

imposition of a $562,000 fine payable to the Court.

The Eleventh Circuit has held that the imposition of a monetary sanction in the form of a financial penalty may be a reasonable use of the Court's discretion under Rule 11 and may often be the most effective and fair means of enforcing Rule 11 and deterring baseless suits. *Donaldson*, 819 F.2d at 1557. But, at the same time the Court must not impose a sanction greater than what is necessary to serve as an effective deterrent. Fed. R. Civ. P. 11(c)(4) (providing that a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"). While "[m]onetary sanctions may be the most effective way to deter a *powerful and wealthy party* from bringing frivolous or vexatious litigation," the Court must also take into account what amount, given the financial resources of the responsible person, is needed for deterrence. *Donaldson*, 819 F.2d at 1557 (emphasis added); *McDonald*, 391 F. App'x at 853. Sperando herself has referenced Judge Patterson's prior recognition (in proceedings following the dismissal of the underlying civil rights action) of the negative status of Mr. Rowe's financial assets. (*See* Ex. 30 to Mot. for Sanctions at 2.) Accordingly, the Court finds that a fine in excess of a half million dollars would be unduly harsh and unreasonable.

Sperando also seeks reimbursement of "at least" $2,225.76 in expenses she claims to have incurred in defending the RICO claim and prosecuting her appeal. While the Court does find it appropriate to compensate Sperando for some of the expenses she incurred as a party, the Court will not impose sanctions in the

amount requested by Sperando because she has failed to specify or substantiate her costs. (*See* Ex. 32 to Mot. for Sanctions, August 24, 2017 Affidavit of Maria Sperando ¶ 2, Doc. 92-5 at 68-69 (noting "not every stamp, photocopy and other expense was logged).) Sperando could have sought certain costs and expenses as a matter of right under Federal Rule of Civil Procedure 54(d) thirty days after the entry of judgment on March 31, 2016 after Plaintiffs' Complaint was dismissed. *See* N.D. Ga. Loc. R. 54.1. Rule 54(d) permits the Court to award a prevailing party their costs and creates a presumption in favor of awarding costs. Fed. R. Civ. P. 54(d); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991). A court may exercise its discretion in awarding costs, but it may not award costs exceeding those permitted by the statute, which are generally limited to filing fees, witness fees, and fees for printing and the costs of making copies of any materials and transcripts necessarily obtained for use in the case. *See Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988); 28 U.S.C. § 1920. Given that Sperando failed to timely file a Rule 54(d) Bill of Costs in this case, she is not entitled to an untimely award of expenses via a Motion for Sanctions. *See id*. Also, Sperando's request for expenses in her Motion for Sanctions does not provide the Court any details regarding the type of costs Sperando is seeking, except to note the expenses were incurred in the district court in defense of the claims and in the appeals court in prosecuting her appeal. However, the Supreme Court has held that Rule 11 sanctions do not apply to appellate proceedings and therefore cannot include

expenses incurred on appeal.  *Cooter & Gell*, 496 U.S. at 405-08.

Considering the deterrent purposes of Rule 11, the Court **SANCTIONS** Plaintiffs' counsel of record, Linell Rowe and Edward Griffith, and Plaintiffs Leonard Rowe and Lee King, jointly and severally, in the amount of a $2,000 fine to be paid to the Court.  The fine **SHALL BE PAID** to the registry of the Court **WITHIN 65 DAYS** of the entry of this Order.  The Court finds this sanction sufficient under the circumstances to deter the parties from repeating this conduct, but not excessively harsh.  The Court also **ORDERS** Plaintiffs and Plaintiffs' counsel to reimburse Sperando for the travel cost she incurred to attend oral argument on the Motion to Dismiss.  Sperando is **ORDERED** to file proof of her travel costs for reimbursement **WITHIN 10 DAYS** of the entry of this Order and if such proof is filed, Plaintiffs are **ORDERED** to remit payment to Sperando **WITHIN 30 DAYS** of receipt of the proof of travel costs. Furthermore, the Court finds that a formal reprimand is necessary to deter future instances of the conduct found by the Court to be in violation of Rule 11(b). Accordingly, for the foregoing reasons, the Court hereby **FORMALLY REPRIMANDS** Plaintiffs' counsel for their failure to comply with Rule 11.[7]

---

[7] The Court will not separately order Plaintiffs or their counsel to make the public apology or public disavowal Sperando requests because they are more akin to defamation remedies that are not appropriate as sanctions in this case.

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Sperando's Motion for Sanctions [Doc. 92]. Plaintiffs are **ADVISED** that their failure to timely comply with this Order may result in additional sanctions.

**IT IS SO ORDERED** this 30th day of March, 2018.


**Amy Totenberg**
**United States District Judge**

19